IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHARMAINE E. FLEMING,<br><br>    Plaintiff,<br><br>    vs.<br><br>NANCY A. BERRYHILL,<br>**Acting Commissioner of Social Security,**<br><br>    Defendant. | REPORT AND<br>RECOMMENDATION<br><br><br>Case No. 1:16-cv-00139-RJS-DBP<br><br>Magistrate Judge Dustin B. Pead<br><br>District Court Judge Robert J. Shelby |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Charmaine Fielding (Plaintiff or Fielding )[1] seeks judicial review of the decision of the Acting Commissioner of Social Security (Commissioner) denying her claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act). (ECF No. 23.) On March 6, 2017, United States District Judge Robert J. Shelby referred this matter to Magistrate Judge Dustin Pead for proposed findings and recommendations. (ECF No. 19); *See* 28 U.S.C. § 636(b)(1)(B) and (C). After careful review of the entire record, the parties' briefs, and the arguments presented at oral argument (ECF No. 30), the undersigned recommends that the Commissioner's decision be AFFIRMED.

---

[1] In this matter, the complaint identifies Plaintiff as Charmaine E. Fleming. (ECF No. 2.) However, throughout her brief and the agency records Plaintiff is identified as "Charmaine Fielding" or "Ms. Fielding". (ECF No. 16, ECF No. 23, ECF No. 26.) Accordingly, the court refers to Plaintiff as "Plaintiff" or "Fielding" throughout its recommendation.

**Page 1**

## PROCEDURAL HISTORY

Plaintiff claimed disability beginning August 1, 2012, based on bipolar disorder, post-traumatic stress disorder (PTSD), depression, and attention deficit hyperactivity disorder (ADHD). (Administrative Transcript, (Tr.) 208, 249.) Fielding applied for SSI benefits on October 23, 2012. (Tr. 208.) Plaintiff's claim was denied initially and upon reconsideration. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge (ALJ) which was held on May 13, 2014.

In a decision dated February 4, 2015, the ALJ applied the familiar five-step sequential evaluation process for evaluating disability claims. (Tr. 22-34); *see generally* 20 C.F.R. § 416.920(a)(4). In doing so, the ALJ concluded that Fielding had a severe impairment (a mental impairment variously diagnosed to include bipolar disorder, depression, anxiety disorder, ADHD, PTSD, borderline personality disorder, and borderline intellectual functioning), but the impairments did not meet or equal the severity of a listed impairment. (Tr. 24-27.) The ALJ then concluded that Plaintiff retained the residual functional capacity (RFC) to perform work at all exertional levels but was restricted to simple, routine, one-to-two step tasks, occasional interaction with supervisors and co-workers and no interaction with the public. (Tr. 27-32.) In light of this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work, but could perform other jobs existing in significant numbers in the national economy, and therefore was not disabled under the Act. (Tr. 32-34.) The Appeals Council later denied Plaintiff's request for review (Tr. 1-7), making the ALJ's decision the Commissioner's final decision for purposes

of judicial review. *See* 20 C.F.R. §§ 416.1481, 422.210(a). Fielding's appeal to the District Court followed. (ECF No. 2.)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]." *Id.* (citation omitted). Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

## DISCUSSION

In challenging the ALJ's decision, Plaintiff asserts the ALJ: (1) erred in finding that she did not meet the requirements of Listing 12.05; (2) failed to properly weigh the medical opinion evidence; and (3) failed to properly evaluate her symptom testimony. (ECF No. 23 at 14-25.) The Court addresses each of Fielding's arguments in the order raised on appeal.

### The ALJ properly found that Plaintiff's impairments did not meet Listing 12.05.[2]

Plaintiff argues she is "per se disabled" and alleges that she meets the requirements of Listing 12.05(C). (ECF No. 23 at 13-17.) Fielding takes issue with the ALJ's finding that she did not have the requisite deficits in adaptive functioning. The Commissioner argues Fielding failed to meet her burden to show that she met Listing 12.05. (ECF No. 25 at 8-12.)

Page 3

The listings at 20 C.F.R. part 404, subpart P, appendix 1, cover medical conditions so debilitating that they warrant an automatic finding of disability without further consideration of the claimant's RFC or ability to perform past or other work. *See Sullivan v. Zebley*, 493 U.S. 521, 534 (1990). In order to establish that she meets a listing, claimant must "meet *all* the specified medical criteria" for the listing. *Id.* at 530 (emphasis in original); 20 C.F.R. § 416.926(b)(2)-(3). Claimant must also show that the medical criteria were met for a period of 12 continuous months. *See* Social Security Ruling (SSR) 86-8, 1986 WL 68636, at *3; 20 C.F.R. § 416.909.

The listing at issue here, Listing 12.05 (Intellectual Disability, formerly referred to as Mental Retardation), is structured differently than other mental disorders listings. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A). As stated, Listing 12.05 contains an introductory paragraph, or a "capsule definition," with criteria the claimant must meet in addition to meeting one of the "four severity prongs" for intellectual disability. *See, e.g., Lax*, 489 F.3d at 1085 (a claimant must satisfy both the capsule definition of mental retardation found in Listing 12.05 and the severity prong of the listing in order to meet the listing). As the agency's regulations explain, "[i]f [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria [paragraphs A through D], we will find that [her] impairment meets the listing." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (emphasis added). Thus, meeting the introductory paragraph's diagnostic description for intellectual disability is a prerequisite to consideration of paragraphs A through D, the "severity prongs" of listing 12.05.

The diagnostic description of 12.05 requires that in order to be found intellectually disabled, the claimant must demonstrate "significantly subaverage general intellectual

---

[2] Medical Listing 12.05 was revised by new Regulations promulgated on September 26, 2016, which became effective January 17, 2017---after the ALJ issued her decision in this case.

**Page 4**

functioning with deficits in adaptive functioning initially manifested during the developmental period [i.e., onset before age 22]." 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.05. Here, the ALJ appropriately found that Plaintiff failed to establish "deficits in adaptive functioning" as required to meet the Listing.

After testing, Plaintiff's physicians diagnosed her with borderline intellectual functioning instead of intellectual disability (or mental retardation). (Tr. 416, 408.) The significance of this diagnosis is that the Diagnostic and Statistical Manual of Mental Disorders (DSM) provides the difference between borderline intellectual functioning and intellectual disability is whether the individual has the requisite level of deficits in adaptive functioning. *See* DSM-IV-TR at 41-42 (noting it is possible to diagnose mental retardation in individuals with IQs between 70 and 75 if they exhibit significant deficits in adaptive behavior; conversely, mental retardation would not be diagnosed in an individual with an IQ score lower than 70 if there are no significant deficits or impairments in adaptive functioning). Additionally, as the ALJ noted (Tr. 27), Plaintiff was independent in her ability to care for herself, had at least "partial responsibility for two children on a daily basis," previously worked for several years, had a valid driver's license, and was able to take public transportation. (Tr. 27; *see* Tr. 50-52, 55-56, 76, 217.) The record also showed that Fielding was enrolled in the Nurse Assisting Program at Davis Applied Technology College from October 2011 to April 2012, and completed 165 hours of course work receiving an A- on her graded coursework. (Tr. 305-07.) This evidence supports the ALJ's conclusion that Plaintiff did not demonstrate the requisite deficits in adaptive functioning.

Fielding asserts the ALJ's finding is in error because "there is no evidence that [she] has ever lived on her own." (ECF No. 23 at 15.) However, the ALJ concluded that Plaintiff was "independent in her ability to care for herself," not that she "lived on her own." (Tr. 27.) In

**Page 5**

further support, the court notes that at the administrative hearing Fielding testified she was able to care for herself, including bathing and dressing without assistance from others. (Tr. 76.) In addition, Plaintiff argues she "never watche[d] her brother's children without help," the ALJ stated that Fielding was able to take "partial responsibility for two children on a daily basis", which is consistent with Plaintiff's own testimony. (Tr. 50-52.) Further, Plaintiff does not disagree that she was able to work as a bus aide from 2009 through 2011. (Tr. 332.)

The court concludes that Plaintiff's challenges to the ALJ's findings are more properly characterized as requests for this Court to reweigh the evidence, which it may not do. *See Lax*, 489 F.3d at 1084 (on substantial evidence review, the court does not re-weigh the evidence or substitute its judgment for that of the Commissioner). The court finds that Fielding fails to show that she meets the capsule definition for listing 12.05, which requires significantly sub-average general intellectual functioning with deficits in adaptive functioning "initially manifested . . . before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05; *see also Bland v. Astrue,* 432 F. App'x 719, 723 (10th Cir. 2011) (unpublished) (finding, despite an IQ score of 67 and severe physical impairments, that the plaintiff did not meet Listing 12.05 because he did not show that he met the capsule definition; specifically, the plaintiff did not have the required deficits in adaptive functioning as the evidence showed that he was able to complete the 11th grade and perform unskilled and semi-skilled work for a number of years).

**<u>The ALJ afforded appropriate weight to the various treating physician opinions.</u>**

Next, Fielding challenges the ALJ's evaluation of the opinions of Plaintiff's family physician Dr. Gardner, treating psychiatrist Dr. Lang, examining psychologist Dr. Neims and reviewing psychologist Dr. Reade. (ECF No. 23 at 17-22.) The Court finds that the ALJ reasonably weighed all of the medical source opinions and declines to remand on this basis.

**Page 6**

1.  **Dr. Gardner**

Family physician Dr. Gardner authored multiple opinions regarding Plaintiff's mental impairments, generally opining that her limitations ranged from moderate to marked. (Tr. 476-83, Tr. 526-34, 536, 554-58.) The ALJ considered these opinions, but determined they were inconsistent with Dr. Gardner's limited treatment notes. (Tr. 31.) For example, the ALJ noted that Dr. Gardner's mental status examinations revealed Fielding was fully oriented, with appropriate mood and affect, intact associations and no evidence of hallucinations, delusions, or suicidal ideation. (Tr. 31; *see, e.g.*, Tr. 549, 551.) Although cursory, the Court finds the ALJ reasonably evaluated this opinion and adequately addressed what the substantial evidence standard requires—citing to evidence in support of his conclusion that Dr. Gardner's limitations were inconsistent with his relatively normal findings on examination. *See* 20 C.F.R. § 416.927 (c)(4) (stating an ALJ must consider consistency); *Simmons v. Colvin*, No. 15-4037, 2015 WL 9311373, at *2 (10th Cir. Dec. 23, 2015) (unpublished) ("The ALJ also properly relied on the fact that Dr. Morse's impairment ratings on the forms were far more extreme than his own treatment notes would suggest.").

2.  **Dr. Lang**

In May 2014, Dr. Lang opined that Fielding had mild limitations in her ability to carry out simple, one-to-two step instructions and ask simple questions or request assistance, but the remainder of her mental limitations ranged from moderate to marked. (Tr. 572.) In June 2014, Dr. Lang completed a letter, indicating that she met the requirements of Listing 12.05 (Intellectual Disability) based on certain marked limitations. (Tr. 575.) The ALJ considered these

**Page 7**

opinions, but determined they were entitled to little weight because Dr. Lang did not provide a record of the clinical testing performed. (Tr. 31.) As a result, the ALJ concluded that it was not clear that Dr. Lang's opinions were supported by any objective evidence, *e.g.,* the requisite IQ testing. (Tr. 31.)

The court finds that the ALJ's evaluation of Dr. Lang's opinion, while cursory, is sufficient to satisfy the substantial evidence standard. The ALJ was not required to accept Dr. Lang's bare assertion that Plaintiff met the requirements of Listing 12.05, especially considering that the statement was not supported by any objective evidence or testing. *See Harris v. Sec'y of Health & Human Servs.*, 821 F.2d 541, 543 (10th Cir. 1987) (a treating physician's "bare statement" that the claimant met a listing did "not meet the level of evidence required to prove the existence" of a listing-level impairment).In turn, the court agrees that although Dr. Lang opined Fielding would experience many moderate to marked limitations, the basis for his opinion was not clear. Any clinical testing or objective evidence underpinning these conclusions was not included in the record (Tr. 569-72) and Dr. Lang authored his relatively extreme opinion on May 21, 2014—the very first day he examined the Plaintiff. (Tr. 569, 573.) As the ALJ discussed, the other record evidence did not support more than moderate limitations in Plaintiff's mental functioning, and there was little support for the extreme limitations assigned by Dr. Lang. (Tr. 25-26, 29-32.)

Relying upon the Tenth Circuit's holding in *Robinson v. Barnhart*, Fielding argues that a "psychological opinion may either rest on observed signs and symptoms or on psychological tests . . . ." (ECF No. 23 at 19); 366 F.3d 1078, 1083 (10th Cir. 2004). However, the instant case is distinguishable. In *Robinson*, the ALJ considered an opinion from a psychiatrist who treated the claimant on at least a monthly basis for three years prior to authoring his opinion. 366 F.3d at

**Page 8**

1081. After such an involved treatment history, it is reasonable that a medical professional would have an understanding of a claimant's impairments, based upon observed signs and symptoms. Here, Dr. Lang did not have a treatment history; instead, he authored his opinion on the same day that he treated Plaintiff for the first time. (Tr. 569, 573.) Under such circumstances, it is reasonable for the ALJ to look for objective evidence to support the opinion, especially where the opinion assigns such extreme limitations. Indeed, the agency's regulations explicitly recognize that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight . . . will [be] give[n to] that opinion." 20 C.F.R. § 404.1527(c)(3); *see also Chapo v. Astrue*, 682 F.3d 1285, 1292-93 (10th Cir. 2012) (ALJ reasonably rejected unsupported opinion on check-box form where the physician had only treated the claimant for one month, and none of the physician's notes, if any, were in the record).

Thus, based on a review of the record as a whole, the court concludes that the ALJ reasonably discounted Dr. Lang's opinions. *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498 (10th Cir. 1992) (ALJ reasonably gave more weight to opinions of examining doctors whose evaluations included extensive testing than to the opinion of a treating physician whose opinion was not supported by specific findings).

### 3. Dr. Neims

In September 2012 Dr. Neims completed a one-time evaluation of Plaintiff, opining that Fielding had marked limitations in her ability to learn new tasks, make simple work-related decisions and communicate and perform effectively in a work setting, but that she had moderate limitations in other areas and mild limitations in her ability to understand, remember, and persist in tasks by following very short and simple instructions. (Tr. 415-17.) The ALJ concluded that Dr. Neims's opinion was entitled to little weight because it was based on outdated records and

**Page 9**

Plaintiff's subjective complaints and was inconsistent with Dr. Neims's own observations of Fielding. (Tr. 31.) Upon review, the court concludes the ALJ gave adequate reasons, supported by substantial evidence, for discounting the opinion of Dr. Neims. Specifically, although Dr. Neims reviewed some of Fielding's records in making his determinations, the records were dated before Plaintiff's alleged disability onset date and are not directly probative of Plaintiff's current mental functioning. (Tr. 31; *see* Tr. 415.)

Next, the ALJ concluded that because Dr. Neims did not perform any objective tests to support his conclusions, Dr. Neims's opinion was based on Plaintiff's subjective complaints. (Tr. 31; *see* Tr. 415-22.) The language of Dr. Neims's opinion is illustrative of the extent to which he based his opinion on Plaintiff's subjective complaints, as he notes: "Claimant *details* patterns of mood instability and indicates *historical* diagnosis of bipolar disorder . . . . Claimant *details* emotional lability . . . . Claimant *indicates* long history of difficulties with recollection . . . . She *emphasized* difficulty with reading, comprehension, and recollection . . . ." (Tr. 451-21) (emphasis added). Thus, while Plaintiff's complaints were recorded, Dr. Neims did not actually verify the complaints through objective clinical testing. (Tr. 420-21.) Based thereon, the court finds that the ALJ could reasonably conclude that Dr. Neims's opinion relied more heavily on Fielding's statements rather than objective medical evidence. *See Wilson v. Astrue*, 602 F.3d 1136, 1147 (10th Cir. 2010) (rejecting the claimant's argument that the ALJ's statement that the limitations noted in Dr. Smith's earlier work release "appear[ed] to be based on [Ms. Wilson's] subjective complaints," "was impermissible speculation" "It appears that these statements were merely referencing the absence of objective medically testable physical impairments, not concluding that such an absence was dispositive.").

Finally, the ALJ determined that Dr. Neims's extreme opinion was inconsistent with his own observations of Plaintiff, including that she was fully oriented, friendly, and able to maintain good eye contact throughout the appointment. (Tr. 31.) Thus, the court finds that the ALJ properly provided several reasons, supported by substantial evidence, for giving less weight to Dr. Neims's opinion.

### 4. Dr. Reade

Plaintiff takes issue with the weight given by the ALJ to the opinion of the reviewing state agency psychologist, Dr. Reade. (ECF No. 23 at 20.) Dr. Reade reviewed the record and opined that Plaintiff would have no restrictions in her activities of daily living, but would have moderate difficulties in maintaining social functioning and in concentration, persistence, or pace. (Tr. 114.) Dr. Reade concluded that Fielding remained able to carry out routine tasks of one-to-two steps and could have casual contact with co-workers, but required a setting with little or no public contact. (Tr. 116-17.) The ALJ determined that Dr. Reade's opinion was entitled to great weight and, consistent with the opinion, the ALJ limited Plaintiff to simple, routine, one-to-two step tasks, occasional interaction with supervisors and co-workers and no contact with the public. (Tr. 27, 31-32.)

The court finds Dr. Reade's opinion to be consistent with the record as a whole, including the evidence showing Fielding's mental status examinations as unremarkable and describing Plaintiff as "stable" with symptoms generally controlled with medication. (Tr. 459, 465-69, 486, 544, 523, 55.) Dr. Reade's opinion provides substantial evidence in support of the ALJ's decision. *See* 20 C.F.R. § 416.927(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-

examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).

Next, Fielding asserts that an opinion from a reviewing psychologist "cannot outweigh the well-supported opinions from treating and examining medical sources." (ECF No. 23 at 20.) Nonetheless, in this case, the ALJ reasonably determined that other medical source opinions were not "well-supported" because they were inconsistent with the physicians' treatment notes and, as discussed above, lacked foundation in clinical testing. The court notes it is permissible for an ALJ to give greater weight to the opinion of a state agency psychologist where, as here, the psychologist's opinion is better-supported by the record. *See* 20 C.F.R. § 416.927(e)(2)(ii) (ALJ should evaluate a State agency medical consultant's opinion using the factors set forth in 20 C.F.R. § 416.927(a)-(d)), 416.927(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole); *see also McDonald v. Astrue*, 492 F. App'x 875, 881-82 (10th Cir. 2012) (unpublished) (doctor who met with the claimant twice for a "consultation" but never examined her had no greater insight into the claimant's medical condition than a source who had only reviewed her medical records).

Finally, Plaintiff raises the issue that the ALJ improperly relied on Dr. Reade's opinion because it was completed in March 2013 and as a result the psychologist was not able to review subsequent medical records. (ECF No. 23 at 20.).  Here, however, any suggestion that reviewing a later opinion would have been more restrictive is undercut by Fielding's unremarkable mental status examinations and reports of improvement between 2013 and the time of the ALJ's decision. (Tr. 486, 523, 543-44, 551, 588);  *see, Tarpley v. Colvin*, 601 F. App'x 641, 644 (10th Cir. 2015)  (unpublished) (rejecting a claimant' s argument that an ALJ should not have relied on

Page 12

an opinion because evidence received after the opinion was consistent with it and did not render it "stale" ). Accordingly, the Court finds that the ALJ reasonably relied on Dr. Reade's opinion.

### The ALJ reasonably discounted Plaintiff's subjective complaints.

Lastly, Fielding asserts that the ALJ improperly discounted her complaints of completely disabling limitations. (ECF No. 23 at 22-25.) In response, the Commissioner contends that the ALJ gave valid reasons for concluding that Plaintiff's extreme complaints were not consistent with the record and the ALJ's findings were supported by substantial evidence in the record.

Here, the ALJ reasonably relied on the inconsistent statements provided by Plaintiff regarding her symptoms and functional abilities. (Tr. 30.) For instance, the ALJ noted Fielding testified that 2012 was the last time she was able to go shopping, and yet a Function Report from Joshua Palmer states he and Plaintiff went shopping at the grocery store and mall in 2013. (Tr. 30; *see* Tr. 77, 276.) Additionally, Plaintiff testified that she had a boyfriend for only one week after her marriage ended but, in several other records, Fielding states that Mr. Palmer was her long-term boyfriend and she lived with him. (Tr. 30; *see* Tr. 267, 269, 288, 298, 455, 467, 596.) Mr. Palmer also refers to himself as Plaintiff's boyfriend in his Function Report. (Tr. 276.) Although Fielding takes issue with these findings, the court concludes that because she alleged difficulties in her ability to perform normal activities and to form and maintain relationships with others (Tr. 288, 291), it was reasonable for the ALJ to consider her inconsistent statements regarding these abilities. *See* 20 C.F.R. § 416.929(c)(4) (an ALJ must consider whether there are conflicts between a claimant's statements and the rest of the evidence); *Wilson*, 602 F.3d at 1146 (ALJ reasonably noted inconsistency between claimant's statement she could not sit for more than 30 minutes and her statement that she was not allowed to drive for more than 90 minutes);

*Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (noting discrepancies between the claimant's prior statements about his daily routine and activities and his hearing testimony).

Furthermore, the ALJ summarized the objective medical evidence (Tr. 29-30) and concluded that while Plaintiff had limitations, she remained able to perform work with the significant mental limitations assessed. *See* 20 C.F.R. § 416.929(c)(4) ("we will evaluate your statements in relation to the objective medical evidence"); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (in assessing credibility, an ALJ may consider "the consistency or compatibility of nonmedical testimony with objective medical evidence."). Therefore, the Court finds that the ALJ provided valid reasons for discounting Plaintiff's subjective complaints of completely disabling limitations and on substantial evidence review it is not the role of the court to re-weight the evidence. *See Lax*, 489 F.3d at 1084 (on substantial evidence review, the court does not re-weigh the evidence or substitute its judgment for that of the Commissioner).

Finally, Plaintiff complains that the ALJ should not have considered Fielding's prior illegal drug use in assessing the consistency of her symptom testimony with the record. (ECF No. 23 at 23.) Nonetheless, the ALJ provided other valid reasons for discounting Plaintiff's testimony, so this complaint does not provide a basis for remand. *See Lax*, 489 F.3d at 1088 (ALJ's error in relying on an invalid reason (for invalidating the claimant's IQ scores) was harmless where the ALJ identified other valid reasons for finding); *Pickup v. Colvin*, 606 F. App'x 430, 433-34 (10th Cir. 2015) (unpublished) (affirming the ALJ's credibility determination despite finding two of the reasons given by the ALJ were not supported by substantial evidence).

As such, this court concludes that the Commissioner's decision is supported by substantial evidence and the evidence as a whole supports the ALJ's decision. It is therefore recommended that the decision of the ALJ be affirmed.

**Page 14**

## RECOMMENDATION

Because the ALJ's decision is supported by substantial evidence and is free of harmful legal error, the undersigned hereby recommends that it be AFFIRMED. The parties are hereby advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make a timely objection may waive the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

DATED this 5th day of September, 2017.

_____
Dustin B. Pead
U.S. Magistrate Judge