UNITED STATES DISTRICT COURT

DISTRICT OF UTAH—CENTRAL DIVISION

| | |
|---|---|
| CHARMAINE E. FLEMING,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | **ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>Case No. 1:16-cv-00139-RJS-DBP<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

Plaintiff Charmaine Fielding[1] seeks in this action reversal or remand of a final agency decision denying her claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.[2] Before the court is her Objection[3] to Magistrate Judge Dustin B. Pead's Report and Recommendation advising the court to affirm that denial.[4] The court has conducted a de novo review of the issues raised in Fielding's Objection. Having carefully considered the parties' briefing, applicable law, evidentiary record, and reasoning in Judge Pead's Report and Recommendation, the court OVERRULES Fielding's Objection, ADOPTS Judge Pead's Recommendation in its entirety, and AFFIRMS the denial of benefits.

---

[1] Plaintiff is identified in the case caption as Charmaine Fleming. But in the Administrative Record and most of the parties' filings, she is referred to as Charmaine Fielding. The court will use the last name Fielding.

[2] Dkt. 3, Complaint; Dkt. 23, Opening Brief.

[3] Dkt. 32.

[4] Dkt. 31.

## BACKGROUND

Fielding applied for SSI alleging disability beginning on August 1, 2012, when she was twenty-seven years old. She based her claim on multiple mental impairments. Fielding had worked in the past as a bus attendant, but had not completed high school and had a history of mental and emotional issues.

After her claim was denied initially and upon reconsideration, Fielding sought a hearing before an Administrative Law Judge (ALJ). Following a May 2014 hearing, the ALJ determined in a February 5, 2015 decision that Fielding suffered from severe mental impairments,[5] but was not disabled under section 1614(a)(3)(A) of the Social Security Act.[6] The ALJ found Fielding did not have a mental impairment or combination of impairments that met or equaled in severity one of the listed impairments in 20 C.F.R. Part 404, in part because she had not established an intellectual disability with evidence showing "significant deficits in adaptive functions prior to age 22."[7] The ALJ further found that Fielding retained the residual functional capacity to do work—albeit different from her past work.

Fielding appealed the ALJ's decision to the agency's Appeals Council. The Council denied her request for review. Fielding then filed this case, appealing the Commissioner's final decision. The court referred this case to Magistrate Judge Dustin B. Pead pursuant to 28 U.S.C. § 636(b)(1)(B).[8] Judge Pead issued a thorough Report and Recommendation advising this court

---

[5] Dkt. 16, Administrative Record, at Tr. 24 (noting mental impairment "variously diagnosed to include bipolar disorder, depression disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), borderline personality disorder, and borderline intellectual functioning. . . .").

[6] Tr. at 34 (Dkt. 16).

[7] Tr. at 27 (Dk. 16).

[8] Dkt. 19.

to affirm the final decision denying benefits to Fielding.[9] Fielding filed a timely Objection[10] to Judge Pead's Recommendation, to which Defendant Nancy Berryhill filed a Response.[11]

## APPLICABLE LAW

Fielding must show that she is disabled.[12] One is disabled within the meaning of the Social Security Act only if her physical or mental impairments preclude her from performing both her previous work and any other substantial gainful work available in the national economy.[13] To determine disability, the Commissioner follows a five-step sequential process:

> Step one requires the claimant to demonstrate that he is not presently engaged in substantial gainful activity. At step two, the claimant must show that he has a medically severe impairment or combination of impairments. At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits. If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work.
>
> If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy . . . . If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[14]

This court reviews only whether the ALJ applied the correct legal standards and whether the decision below is supported by substantial evidence,[15] meaning evidence a reasonable person would accept as adequate to support a conclusion—more than a scintilla but less than a

---

[9] Dkt. 31.

[10] Dkt. 32.

[11] Dkt. 33.

[12] *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008).

[13] 42 U.S.C. § 423(d)(2).

[14] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (quoting *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007)) (quotation marks and citations omitted) (brackets in original).

[15] *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).

preponderance.[16] In making this determination, the court does not upset credibility determinations when supported by this quantum of evidence, as those determinations "are peculiarly the province of the finder of fact."[17]

**DISCUSSION**

Before Judge Pead and her in Objection to his Report and Recommendation, Fielding argues the ALJ erred by:

1) failing to find she had not met Medical Listing 12.05(c), intellectual disability, and was not "per se disabled";

2) giving little weight to her family doctor, Dr. Gardner, treating psychiatrist, Dr. Lang, and examining psychologist, Dr. Neims,[18] while giving the greater weight to a state agency-hired reviewing psychologist, Dr. Reade;[19] and

3) finding her statements about her symptoms not altogether credible.[20]

The court discusses these issues in turn.

**I.     ALJ's Consideration of 12.05**

Fielding claims the ALJ erred at step three in the five-step disability evaluation process, which requires the ALJ to assess whether the claimant's impairments meet or equal in severity certain established impairments described in Appendix 1 of the regulations.[21] At this step, if the claimant meets or equals a listing—by establishing that she meets all the specific criteria—she is

---

[16] *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (10th Cir. 1992).

[17] *Wilson*, 602 F.3d at 1144.

[18] Dkt. 23 at 18.

[19] *Id.* at 20.

[20] Tr. at 30 (Dkt. 16).

[21] 20 C.F.R. § 404.1520(d).

4

automatically found disabled, and the analysis ends. If not, the ALJ continues to the remaining steps to assess the claimant's residual functional capacity (RFC) and ability to work.

Before Judge Pead and in her Objection, Fielding argues that she is disabled "per se" and meets the requirements of Listing 12.05(c), Intellectual Disability. This required her to establish both a diagnostic description and one of four "severity prongs." The diagnostic description provides: "Intellectual disability: intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in [subparts] A, B, C, or D. are satisfied." Here, Fielding relies on subpart C as the severity prong to establish her alleged disability. It provides: "C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

At issue is whether Fielding established requisite deficits in her adaptive functioning before age 22. The ALJ found she had not, noting the evidence "shows that the claimant has no significant deficits in adaptive function prior to age 22."[22] The ALJ explained that Fielding was "independent in her ability to care for herself, she undertook at least partial responsibility for two children on a daily basis, and has previously worked at the substantial gainful activity level. She has a valid driver's license and []is able to take public transportation."[23]

In briefing before Judge Pead, Fielding argued these findings from the ALJ were "not accurate" because she had not done certain activities wholly "on her own," including living on

---

[22] Tr. at 27 (Dkt. 16).
[23] *Id.*

5

her own, handling her own finances, watching her brother's children, or going places. She had lived with others, watched her brother's children along with her mom, and went to stores and other places accompanied by others. And, she had only worked one job and had failed to graduate from high school. But citing these additional facts does not render the ALJ's findings inaccurate—they simply underscore that she had done some activities with others. At bottom, Fielding's argument before Judge Pead on this point is one seeking the re-weighing of evidence. She argued that the "totality of the record demonstrates" she "had an onset of subaverage intellectual functioning with deficits in adaptive functioning prior to age 22."[24]

In his Report & Recommendation, Judge Pead found this sort of challenge to the ALJ's findings impermissibly asked the court to reweigh the evidence. And, while Fielding alleged that the ALJ's decision contained factual errors concerning what she had done "on her own," Judge Pead noted that the decision had stated Fielding could engage in important life activities independently—care for herself, bathe, dress, daily take partial responsibility for two children, and hold a job as a bus aide from 2009 to 2011. Judge Pead thus concluded that Fielding failed to establish she met listing 12.05.[25]

In her Objection, Fielding contends that Judge Pead recommends this court find that she "failed to present sufficient evidence to satisfy the requirements of Medical Listing 12.05(C) solely because there is no evidence of deficits in adaptive functioning prior to age 22."[26] She re-

---

[24] Dkt. 23 at 16.
[25] Dkt. 31 at 6.
[26] Dkt. 32 at 2.

argues her view of the "totality of the record,"[27] contending the ALJ's findings are not a "sufficient" basis to conclude that she had not shown deficits in adaptive functioning.[28]

For the same reasons Judge Pead cited in his Report & Recommendation, the court concludes that Fielding fails to establish the ALJ erred in finding she had not shown deficits in adaptive functioning prior to age 22. The ALJ recited evidence showing Fielding lived quite independently, and additional evidence showing she did not do every activity on her own does not require a different conclusion. The court does not reweigh or substitute its judgment for that of the ALJ.[29] Judge Pead's analysis of this issue is entirely correct, and the court adopts his recommendation that the undersigned find the ALJ properly found Fielding's impairments did not meet Listing 12.05(c).

**II.    ALJ's Weighing of Medical Opinion Evidence**

Fielding argued before Judge Pead the ALJ improperly gave little weight to: 1) her family doctor, Dr. Gardner; 2) treating psychiatrist, Dr. Lang; and 3) examining psychologist, Dr. Neims.[30] Fielding also argued the ALJ erred in giving the greatest weight to an agency-retained reviewing psychologist, Dr. Reade.[31] In a detailed analysis of each treating doctor, Judge Pead concluded that the ALJ's determination to afford little weight to their opinions was reasonable and supported by substantial evidence, and that the ALJ's significant weight given to Dr. Reade was reasonable. Judge Pead compellingly distinguishes this case from *Robinson v. Barnhart*,[32]

---

[27] *Id.* at 5.

[28] *Id.* at 3.

[29] *Lax,* 489 F.3d at 1084.

[30] Dkt. 23 at 18.

[31] *Id.* at 20.

[32] 366 F.3d 1078 (10th Cir. 2004).

7

the case Fielding primarily relies on for the latter point both in the briefing before him and in her Objection.[33]

The court finds Judge Pead's analysis on this point is correct, and adopts it in its entirety, and rejects Fielding's arguments for the same reasons Judge Pead cites.

### III. The ALJ's Evaluation of Fielding's Credibility

Fielding lastly takes issue with the ALJ's finding that while her impairments "could reasonably be expected to cause some of the alleged symptoms" her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[34] The ALJ found and recited in her decision "several inconsistencies between [Fielding's] testimony at the hearing and allegations with the evidence in the record."[35] These included hearing testimony that she had only had one boyfriend since her divorce, for just one week, when significant other evidence showed she had a long-term boyfriend. And, there was inconsistent evidence concerning her self-reported use of illegal drugs over the years. Other inconsistencies concerned the reasons she quit a job and how recently she had been able to visit a shopping mall.

Fielding argued before Judge Pead that the "ALJ's credibility finding is not supported by substantial evidence" and that it is unclear if the ALJ's findings even relate to Fielding's statements about her medical conditions.[36] Under a recently-adopted rule not governing at the time Fielding made her claim or received a final agency decision,[37] credibility findings unrelated

---

[33] Dkt. 31 at 6-13.

[34] Dkt. 16 at 35; Tr. at 30.

[35] *Id.*

[36] Dkt. 23 at 23-24.

[37] SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), inapplicable at the time the Commissioner's decision became final, provides in relevant part:

to disabilities cannot be applied to evaluate a claimant's statements about symptoms and functions. Fielding argued below that the new rule should apply persuasively and guide the court to conclude that the ALJ erred.

The court finds—for the same reasons Judge Pead correctly concluded—that the ALJ reasonably relied on Fielding's inconsistent statements, and that this reliance related to her symptoms and functional abilities regardless of the persuasiveness of the new rule. For example, Fielding's testimony regarding whether and when she went shopping was relevant to her functional ability. And as Judge Pead noted, Fielding's testimony about her long-term boyfriend was relevant to issues she had raised in her hearing testimony regarding her ability to function and maintain personal relationships. Where the ALJ summarized the medical evidence and concluded that Fielding was able to work dispute significant limitations, the ALJ's findings legitimately provided a basis for discounting Fielding's subjective reports of complete disability. Thus, the court is unmoved by Fielding's Objection on this issue.

## CONCLUSION

For the reasons stated, the court concludes that Judge Pead's Report and Recommendation correctly states and applies the law and is supported by the record. The court ADOPTS the Report and Recommendation in its entirety. Fielding's Objection is

---

Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities or, for a child with a title XVI disability claim, limit the child's ability to function independently, appropriately, and effectively in an age-appropriate manner.

OVERRULED, and the Commissioner's decision is AFFIRMED. The Clerk of Court is directed to close this case.

SO ORDERED this 26th day of March, 2018.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge